PRINCE CORPORATION, A MICHIGAN CORPORATION, PETITIONER
*v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7645–76R.   Filed November 23, 1976.

---

*Howard K. Schwartz* and *Thomas A. Sansone,* for the petitioner.

*Byron J. Furseth,* for the respondent.

OPINION

DAWSON, *Chief Judge:* This matter is before the Court on petitioner's Motion for Summary Judgment on Question of Jurisdiction filed on August 24, 1976. After a hearing was held in Washington, D.C., on September 1, 1976, respondent filed a Motion to Dismiss for Lack of Jurisdiction on October 1, 1976. Since no material issues of fact are presented, the only question confronting us is whether petitioner exhausted its administrative remedies prior to filing its Petition for Declaratory Judgment with this Court in accordance with the provisions of section 7476(b)(3), I.R.C. 1954,[1] on August 16, 1976.

Petitioner is a corporation which has maintained its principal place of business at Holland, Mich., at all times relevant to this proceeding. On or about September 19, 1975, petitioner adopted the Prince Corporation Employee Stock Ownership Trust with a retroactive effective date of October 1, 1974. Proper notice was given to all interested parties on

---

[1] All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

September 12, 1975, that petitioner would seek an administrative determination regarding the initial qualification of the newly established retirement plan under subchapter D of chapter 1 of the Code. One week after adoption on September 26, 1975, petitioner filed a request with the District Director of Internal Revenue, Detroit, Mich., for an initial administrative determination as to whether its employee stock ownership plan qualified as a "retirement plan" for tax purposes. Our inquiry focuses upon the actions of the parties during the intervening period between that date and August 16, 1976, the date petitioner filed for a declaratory judgment in this Court pursuant to Rule 211, Tax Court Rules of Practice and Procedure. Although the parties have not reached agreement concerning the exact sequence of events, we do not regard the discrepancies as significant when the record is reviewed as a whole.

Respondent alleges that five postfiling interchanges occurred between the parties prior to February 26, 1976, the date which petitioner advances as marking the first such communication. It is alleged that petitioner, through its counsel, informed respondent's agent on or about November 28, 1975, that the retirement plan in issue was not intended to be qualified under section 301 of the Tax Reduction Act of 1975. Respondent's agent subsequently notified petitioner's counsel on or about December 11, 1975, that certain amendments to the plan would be required before a favorable determination could issue with respect to the plan. Three requests for such amendments were made to petitioner's counsel between February 17 and February 23, 1976. Petitioner's counsel promised in turn to deliver a draft of the proposed changes within 3 weeks of February 23, 1976.

Counsel for petitioner asserts that he first learned of the assignment of this case to one particular agent on or before February 26, 1976, while discussing another unrelated case with that same individual. Certain changes were requested by respondent's agent at that time and subsequently were incorporated into a major amendment to petitioner's plan which was delivered to the agent within 10 days of the request. Respondent contacted petitioner's counsel twice on March 16 and March 22, 1976, with respect to the proposed amendments. As a result of these communications, peti-

tioner's counsel reportedly promised to deliver a draft by March 29, 1976. That draft was received by the agent on or about March 25, 1976. Petitioner, failing to acknowledge these alleged communications, submits instead that its counsel was forced to contact respondent's agent on April 13, 1976, because it had received no comment on the tendered amendment since it was delivered approximately 1 month earlier. Assurances of prompt consideration allegedly were received in response.

Numerous telephone conversations took place between the respective representatives during the period from March 25 to June 4, 1976, concerning differences between the requested changes and the submissions received. Pursuant to a contact established on May 12, the parties held a conference in respondent's District Office in Detroit on May 24, 1976, at which time the entire plan was reviewed and a number of additional changes were proposed by respondent's agent. Petitioner's counsel submitted executed amendments within 15 days thereafter which incorporated all agreed changes to the plan. Respondent acknowledges that by June 4, 1976, petitioner had amended its plan in such a way as to eliminate many of the contested provisions, but emphasizes that this amendment took the form of a complete restatement of the plan which necessitated a review of the entire document in order to assess fully the scope of the implemented changes.

One significant area of dispute remained completely unresolved at this point in time, however, and both parties realized that some form of accord could not be reached administratively prior to the expiration of 270 days from the date of petitioner's original determination request. Petitioner's counsel forwarded a memorandum of law on this issue to respondent's District Office along with the amendments despite his belief that a resolution was possible only through appeal to a higher administrative authority. Petitioner then notified respondent that a petition would be filed in this Court for a declaratory judgment if a final administrative determination were not rendered by August 1, 1976.

On or about June 28, 1976, respondent's agent forwarded the file in this case to her reviewer with the recommendation that a notice of proposed adverse determination be sent to petitioner. Three weeks later the reviewer requested that

petitioner make additional amendments to its plan. An agreement was reached with respect to most of these proposals and appropriate executed amendments were forwarded to respondent by August 9, 1976. Respondent asserts, however, that the parties were unable to agree on one of the new issues, that the original impasse remained unbreached, and that these amendments were submitted in the form of yet another complete restatement of petitioner's original plan.

Petitioner instituted proceedings in this Court by filing a Petition for Declaratory Judgment on August 10, 1976, 1 day after the last amendments to its plan had been submitted to respondent. Although respondent never has made a final determination with respect to the initial qualification of petitioner's retirement plan, a proposed adverse determination letter was mailed to petitioner on August 17, 1976, setting forth the unsettled issues as grounds for denying qualified status to the plan.

We must decide whether we have jurisdiction to issue a declaratory judgment concerning petitioner's plan. Section 7476 of the Code describes the scope of declaratory judgment relief obtainable in this Court and the circumstances under which it may be sought:

(a) CREATION OF REMEDY.—In a case of actual controversy involving—

(1) a determination by the Secretary or his delegate with respect to the initial qualification or continuing qualification of a retirement plan under subchapter D of chapter 1, or

(2) a failure by the Secretary or his delegate to make a determination with respect to

(A) such initial qualification, or

(B) such continuing qualification if the controversy arises from a plan amendment or plan termination,

upon the filing of an appropriate pleading, the United States Tax Court may make a declaration with respect to such initial qualification or continuing qualification. Any such declaration shall have the force and effect of a decision of the Tax Court and shall be reviewable as such.

(b) LIMITATIONS.—

(1) PETITIONER.—A pleading may be filed under this section only by a petitioner who is the employer, the plan administrator, an employee who has qualified under regulations prescribed by the Secretary or his delegate as an interested party for purposes of pursuing administrative remedies within the Internal Revenue Service, or the Pension Benefit Guaranty Corporation.

(2) NOTICE.—For purposes of this section, the filing of a pleading by any petitioner may be held by the Tax Court to be premature, unless the

petitioner establishes to the satisfaction of the court that he has complied with the requirements prescribed by regulations of the Secretary or his delegate with respect to notice to other interested parties of the filing of the request for a determination referred to in subsection (a).

(3) EXHAUSTION OF ADMINISTRATIVE REMEDIES.— The Tax Court shall not issue a declaratory judgment or decree under this section in any proceeding unless it determines that the petitioner has exhausted administrative remedies available to him within the Internal Revenue Service. A petitioner shall not be deemed to have exhausted his administrative remedies with respect to a failure by the Secretary or his delegate to make a determination with respect to initial qualification or continuing qualification of a retirement plan before the expiration of 270 days after the request for such determination was made.

(4) PLAN PUT INTO EFFECT.—No proceeding may be maintained under this section unless the plan (and, in the case of a controversy involving the continuing qualification of the plan because of an amendment to the plan, the amendment) with respect to which a decision of the Tax Court is sought has been put into effect before the filing of the pleading. A plan or amendment shall not be treated as not being in effect merely because under the plan the funds contributed to the plan may be refunded if the plan (or the plan as so amended) is found to be not qualified.

(5) TIME FOR BRINGING ACTION.—If the Secretary or his delegate sends by certified or registered mail notice of his determination with respect to the qualification of the plan to the persons referred to in paragraph (1) (or, in the case of employees referred to in paragraph (1), to any individual designated under regulations prescribed by the Secretary or his delegate as a representative of such employee), no proceeding may be initiated under this section by any person unless the pleading is filed before the ninety-first day after the day after such notice is mailed to such person (or to his designated representative, in the case of an employee).

Subsection (b) sets forth five specific jurisdictional prerequisites which must be met by any party petitioning for judicial relief. Petitioner herein comes before us pursuant to the provisions of section 7476(a)(2)(A) alleging that there has been a failure by respondent to make a determination with respect to the initial qualification of its retirement plan.

The first four limitations contained in subsection (b) are applicable when a failure to make a determination is in issue. While it appears that petitioner has satisfied limitations (1), (2), and (4) of subsection (b), the controversy herein centers upon whether it has exhausted its administrative remedies within the meaning of subsection (b)(3).

Petitioner contends that this Court has jurisdiction to determine the status of its retirement plan because petitioner has exhausted its administrative remedies within the mean-

ing of section 7476(b)(3). Two alternative arguments are advanced in support of this position. Petitioner first examines the legislative history predating the enactment of section 7476 and concludes that the 270-day period set forth in the second sentence of subsection (b)(3) was intended to establish an absolute deadline by which a determination must be made by respondent before a taxpayer is conclusively presumed to have exhausted his administrative remedies. Noting that more than 270 days had elapsed in this case before its petition was filed, petitioner claims the Court has jurisdiction pursuant to this analysis. Regardless of whether we find its first argument persuasive, petitioner asserts that the record in this case reflects an exhaustion of administrative remedies within the meaning of the first sentence of subsection (b)(3) because of the length of time consumed in the administrative process coupled with respondent's alleged failure to proceed with due diligence. Respondent counters those assertions by contending that (1) the 270-day period provided for in section 7476(b)(3) merely grants respondent a minimum period for consideration of determination requests without judicial interference and is not determinative on the question of exhaustion of remedies, (2) all the facts and circumstances surrounding the administrative consideration of a plan must be considered instead, and (3) respondent has reviewed all of petitioner's submissions diligently. Respondent concludes that petitioner has not exhausted its administrative remedies because it has neither completed the administrative appeals process nor been hampered in its efforts by any lack of diligence on the part of respondent's staff.

Since this is a case of first impression we must look for guidance to the legislative history of section 7476 and various judicial pronouncements concerning the exhaustion of administrative remedies in general. We also deem it helpful to examine respondent's procedural rules relating to section 7476. Section 601.201(o)(11), Statement of Procedural Rules (26 C.F.R. sec. 601.201(o)(11) (1975)), as effective on September 26, 1975, sets forth the procedures by which an applicant could pursue an administrative claim before the Internal Revenue Service:

(11) Exhaustion of administrative remedies. For the purposes of section 7476(b)(3), a petitioner shall be deemed to have exhausted the administra-

tive remedies available to him in the Internal Revenue Service upon the completion of the steps described in paragraph (o)(11)(i) * * * of this section, subject, however, to paragraphs (o)(11)(iv) and (v) of this section. If an applicant, * * * does not complete the applicable steps described below, such applicant * * * will not have exhausted available administrative remedies as required by section 7476(b)(3) and will thus be precluded from seeking a declaratory judgment under section 7476 except to the extent that paragraph (o)(11)(iv)(b) or (v) of this section applies.

(i) The administrative remedies of an applicant with respect to any matter relating to the qualification of a. plan are:

(a) filing of a completed application with the appropriate district director pursuant to paragraphs (o)(3)(iii) through (xii) of this section;

(b) compliance with the requirements pertaining to notice to interested parties as set forth in paragraphs (o)(3)(xiv) through (o)(3)(xxi) of this section;

(c) an appeal to the Office of the Assistant Regional Commissioner (EP/EO) pursuant to paragraph (o)(6) of this section, in the event of a notice of proposed adverse determination from the district director;

(d) a request for National Office consideration pursuant to paragraph (o)(7) of this section, in the event the Assistant Regional Commissioner (EP/EO) upholds the proposed adverse determination. * * *

(iv) An applicant * * * shall in no event be deemed to have exhausted his (its) administrative remedies prior to the earlier of—

(a) The completion of all the steps described in paragraph (o)(11)(i) * * * of this section * * *, subject, however, to paragraph (o)(11)(v), or

(b) The expiration of the 270 day period described in section 7476(b)(3), in a case where the completion of the steps referred to in paragraph (o)(11)(iv)(a) of this section shall not have occurred before the expiration of such 270 day period because of the failure of the Internal Revenue Service to proceed with due diligence.

The steps described in paragraph (o)(11)(i)(c) and (d) of this section will not be considered completed until the Internal Revenue Service has had a reasonable time to act upon the appeal or request for consideration, as the case may be. * * *

(v) The administrative remedies described in paragraphs (o)(11)(i)(c) and (d) of this section will not be available to an applicant with respect to. any issue on which technical advice from the National Office has been obtained.

Although petitioner argues that the wording of those provisions is so unduly permissive that respondent can prolong the administrative review process with impunity to a taxpayer's detriment, we find them unobjectionable when applied to the facts of this case. We also reject petitioner's interpretation of section 7476 which would construe subsection (b)(3) as creating a per se test for exhaustion based on the mere lapse of 270 days from the date an application is filed with the Internal Revenue Service.

The first sentence in subsection (b)(3) denies declaratory judgment relief to taxpayers prior to the exhaustion of their administrative remedies. The second sentence imposes a limitation on this Court by precluding a finding of exhaustion before the Internal Revenue Service has been able to consider a retirement plan for at least 270 days. Through the enactment of section 7476(b)(3), Congress has granted the Internal Revenue Service a grace period within which to review complex retirement plans without judicial interference. This period seems reasonable in light of the variety of plans encountered and the varying degrees of complexity that each type might present.

Once the 270-day period has expired this Court may grant declaratory judgment relief *only if* a taxpayer first is found to have exhausted his administrative remedies. We have been unable to unearth any indication that Congress intended to bestow an automatic right to declaratory judgment relief upon taxpayers once this 270-day period has passed. The language in the statute is unequivocal. Moreover, we find no specific guidance concerning the essential elements of exhaustion under these circumstances. The first paragraph of section 601.201(o)(11)(iv)(*b*), Statement of Procedural Rules, merely restates the second sentence of section 7476(b)(3) of the Code in such a way as to highlight the fact that respondent is granted 270 days for review regardless of whether he uses the period wisely. Prior to April 1, 1976, the remainder of that section set forth respondent's position that the third and fourth steps in the administrative appeals process would not be considered completed until respondent "has had a reasonable time to act upon the appeal or request."[2] This position, too, is consistent with the plain language of section 7476(b)(3). Absent specific statutory guidance, reasonableness of action on the part of both parties plays a vital role in any judicial probe into controversies over a purported exhaustion of administrative remedies.

Petitioner's interpretation of section 7476(b)(3) of the Code is vitiated, however, when the legislative history of that

---

[2] The second paragraph of sec. 601.201(o)(11)(iv)(*b*), Statement of Procedural Rules, was deleted from respondent's published procedures as of Apr. 1, 1976. 26 C.F.R. sec. 601.201(o)(11)(iv)(*b*) (1976).

section is studied. A proposal embracing petitioner's position initially was made in section 601(a) of S. 1179, 93d Cong., 1st Sess. 207 (1973), under which taxpayers would have been granted an automatic right to petition this Court for declaratory judgment relief upon the expiration of a 270-day period. The Senate continued to favor that position in S. 4, amendment No. 496, 93d Cong., 1st Sess. (1973). The stance eventually assumed by the Congress, however, had its genesis in H.R. 12481, 93d Cong., 2d Sess. (1974), and H.R. 12855, 93d Cong., 2d Sess. (1974), which promoted a more moderate position. Current section 7476(b)(3) is substantially identical to those provisions. The House Ways and Means Committee stated in reference to the provision in H.R. 12481 that:

A petitioner is not to be deemed to have exhausted his administrative remedies in cases where there is a failure by the Internal Revenue Service to make a determination before the expiration of 270 days after the request for such a determination to be made. Once this 270-day period has elapsed, a petitioner who has exhausted his remedies may bring an action even though there has been no notice of determination from the Internal Revenue Service. [H. Rept. No. 93–779 (1974), 1974–3 C.B. 244, 351.]

We accept this abandonment of the position taken by the Senate, and urged by petitioner, as a positive rejection of any such automatic right to petition for declaratory judgment relief. The subsequent adoption of an unequivocal, more moderate position mandates our rejection of petitioner's interpretation of section 7476(b)(3).

Our task then is to determine whether, on all of the facts and circumstances presented, petitioner may be deemed to have exhausted its administrative remedies due to respondent's purported failure to process its request expeditiously. Prior judicial determinations of this nature have refused to require exhaustion only in rare cases involving extreme delays. See, e.g., *Walker v. Southern R. Co.*, 385 U.S. 196 (1966) (delays up to 10 years anticipated); *Smith v. Ill. Bell Tel. Co.*, 270 U.S. 587 (1926) (2 years); *Sunshine Publishing Co. v. Summerfield*, 184 F.Supp. 767 (D.D.C. 1960) (1½ years). The Supreme Court of the United States stated recently that the judicial doctrine of exhaustion stands for "the avoidance of premature interruption of the administrative process," *McKart v. United States*, 395 U.S. 185, 193 (1969), particularly

when the exercise of discretion or an application of expertise is required.

The facts here simply do not support a conclusion that petitioner has exhausted its administrative remedies. Indeed, the facts presented by petitioner alone fail to support such a claim. Although more than 300 days had elapsed before a petition was filed with this Court, we cannot find that respondent has protracted the administrative proceedings unduly. A lengthy administrative review of retirement plans often is required because of the variety and complex nature of such plans. Congress recognized this when it created a 270-day grace period in section 7476. Therefore, we cannot view the length of time consumed in isolation. When, as here, the lapse of time is not inordinate, we must consider the actions of the parties throughout the period.

Nothing in this record indicates that either party has been particularly dilatory in its approach to this controversy. On the other hand, neither party has seemed uniformly prompt or even anxious to resolve the issues in an extremely expeditious manner. Each party has been forced to prod the other into action on various occasions. Three substantial plan amendments have been filed by petitioner subsequent to the filing of its original request. A conference between the parties was scheduled and held during the period. Although the administrative appeal initiated by petitioner has not been proceeding optimally, we think the parties have not deviated sufficiently from a normal progression through channels to support a finding that there has been an exhaustion of administrative remedies. In so holding, we do not mean to imply that a petitioner must in all cases complete all steps in the published administrative process prior to petitioning this Court for declaratory judgment relief. After 270 days have passed a petitioner need only demonstrate that progress is severely hampered due to causes beyond its control. In this case petitioner simply has not met that burden. On the other hand, we do not favor a piecemeal approach by respondent in considering a proposed retirement plan. Such an approach may tend to protract unduly the administrative process.

Accordingly, under these circumstances we will deny petitioner's motion and grant respondent's motion to dismiss this case for lack of jurisdiction.

*An appropriate order will be entered.*

