T.C. Memo. 2013-124

UNITED STATES TAX COURT

KENNETH A. CARTER, ROBERT J. KUREK, JOHN MCFAWN, PAUL L. MILES, ADOLPH F. RIVAS, CURLEE THOMAS, AND Q.C. WILLIAMS, JR., Petitioners v. COMMISSIONER OF INTERNAL REVENUE AND A. FINKL & SONS CO. Respondents

Docket No. 2909-10R.                    Filed May 9, 2013.

Finkl intended to terminate its defined benefit plan and added Amendment 1 to effect that intention, providing, inter alia, for distributions as part of the termination process. However, Finkl later decided termination of the Plan was not feasible and added Amendment 2 to delete Amendment 1, thereby continuing the Plan.

Finkl notified the PBGC of Amendment 2 and the PBGC withdrew Finkl's planned termination. Finkl also filed a request for determination by the Commissioner that the Plan, as amended, continued to meet all of the qualification requirements of I.R.C. sec. 401(a). The Commissioner issued a favorable determination letter.

Ps sued Finkl in District Court, asserting that Amendment 2 violated the anticutback provisions of ERISA, the I.R.C., and the

[*2] Plan's contractual anticutback clause. Ps, as interested parties, also filed a petition with this Court to review the Commissioner's favorable determination, asserting that Amendment 2 violated the anticutback rule of the I.R.C. and the Plan's contractual anticutback clause.

The District Court held, and the Court of Appeals affirmed, that Amendment 2 did not constitute an impermissible cutback and that Ps were not entitled to the benefits they claimed. The period within which Ps could file a petition for writ of certiorari with the U.S. Supreme Court expired.

Held: The issue of whether Amendment 2 constitutes an impermissible cutback is precluded in the instant case under the doctrine of collateral estoppel because that issue was previously decided by a final judgment of the Court of Appeals.

Arthur G. Jaros, Jr., for petitioners.

James P. McElligott, Jr., Craig D. Bell, and Bradley A. Ridlehoover, for respondent A. Finkl & Sons Co.

Matthew M. Johnson, for respondent Commissioner of Internal Revenue.

MEMORANDUM OPINION

ARMEN, Special Trial Judge: In this declaratory judgment action under section 7476, petitioners challenge the Commissioner's November 2, 2009 letter determining that the Pension Plan of A. Finkl & Sons Co. For Eligible Office

[*3] Employees (Plan) continued to qualify for favorable tax treatment under Internal Revenue Code (I.R.C.) section 401(a).[1] Petitioners make the rare request that we enter a declaratory judgment that, because of a Plan amendment, the Plan no longer qualifies for favorable tax treatment, despite the Commissioner of Internal Revenue's (Commissioner) determination to the contrary. See Rule 211(c)(4)(D).

At the parties' request, and by Order dated December 7, 2012, the Court agreed to bifurcate the issues for decision. Thus, the first issue for decision, which is procedural in nature, involves issue preclusion under the doctrine of collateral estoppel. The second issue, which is substantive in nature, involves the qualified status of the Plan. Because we hold that the doctrine of collateral estoppel precludes our consideration of the anticutback issue raised by petitioners in their petition with this Court, we sustain the Commissioner's favorable determination regarding the continuing qualification of the Plan.

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986 (codified in 26 U.S.C., and sometimes referred to herein as "I.R.C."), as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*4]                              Background

All of the facts have been stipulated, and they are so found. We incorporate

by reference the parties' stipulation of facts, the stipulated administrative record,

and the accompanying exhibits.

A. Finkl & Sons Co. (Finkl) is a Delaware corporation which had its

principal place of business in Chicago, Illinois, at the time the petition was filed.

Finkl Decides To Terminate the Plan

For many years Finkl has been the employer, sponsor, and administrator of

the Plan. The Plan is a defined benefit plan as described under the Employee

Retirement Income Security Act of 1974 (ERISA), Pub. L. No. 93-406, 88 Stat.

829, as amended. The Plan includes a "30-and-out" early retirement benefit

whereby participants who complete more than 30 years of employment with Finkl,

such as petitioners, are eligible to begin receiving a pension annuity on the date

they retire from the company regardless of whether they have reached the Plan's

designated retirement age of 65.

In late 2006 Finkl decided to voluntarily terminate the Plan. To that end,

Finkl began a standard termination process in accordance with procedures set forth

in ERISA and the regulations promulgated thereunder.

**[\*5]** In January 2008, during the termination process, Finkl adopted a special termination amendment to the Plan (Amendment 1) that stated, in pertinent part:

> [i]f a Participant has not begun to receive a benefit under the Plan at the time benefits are to be distributed on account of termination of the Plan, he may elect to receive his benefit * * * under the Plan in the form of an immediate annuity or a deferred annuity * * * regardless of whether he remains employed by the Employer.

During the termination process petitioners took the position that, under Amendment 1, they were entitled to receive their retirement pensions pursuant to the Plan's "30-and-out" provision immediately even though they remained actively employed by Finkl (in-service benefits). In other words, petitioners claimed that Amendment 1 entitled them to their full retirement pensions without being retired from Finkl.

Finkl Adopts Amendment 2

In May 2008 Finkl concluded that termination of the Plan was not feasible. Finkl sent a letter to all participants informing them that the company had chosen not to terminate the Plan and, therefore, there would be no immediate distribution of assets. In addition, Finkl sent a letter to the Pension Benefit Guaranty Corporation (PBGC) informing it that the company decided to withdraw the Plan from the termination process. Finally, Finkl adopted a second amendment dated

**[\*6]** May 27, 2008 (Amendment 2) stating in part that Amendment 1 "is hereby deleted in its entirety."

In June 2008 the PBGC responded to Finkl's letter, accepting the company's withdrawal from the termination process and confirming that the Plan, as amended, continued to operate.

Previous Labor Law Litigation

In December 2008 petitioners sued Finkl in the U.S. District Court for the Northern District of Illinois, Eastern Division, alleging that Finkl's adoption of Amendment 2 and subsequent refusal to pay petitioners their claimed in-service benefits violated the anticutback provisions of ERISA, the I.R.C., and the contractual anticutback provisions of the Plan itself.[2]  Specifically, petitioners argued that Finkl violated ERISA sec. 204(g) (current version at 29 U.S.C. sec. 1054(g) (2006)), I.R.C. section 411(d)(6), and the Plan's anticutback provisions.

Near the end of December 2008 Finkl mailed a letter to the Commissioner requesting a determination that the Plan, as amended, continued to meet all of the qualification requirements of section 401(a).  In the request Finkl notified the Commissioner of petitioners' District Court suit.  Sometime thereafter petitioners

---

[2]  See Carter v. Pension Plan of A. Finkl & Sons Co., No. 08 C 7169, 2010 WL 1930133 (N.D. Ill. May 12, 2010), aff'd, 654 F.3d 719 (7th Cir. 2011).

**[*7]** wrote to the Commissioner in opposition, arguing that Amendment 2 and Finkl's subsequent refusal to pay petitioners their claimed in-service benefits violated the anticutback provisions of the I.R.C.

In November 2009, while the District Court proceedings were still pending, the Commissioner issued a so-called favorable determination letter deciding that the amended Plan did not violate the anticutback provisions of the I.R.C. and had retained qualified status.

On May 12, 2010, the District Court entered a memorandum opinion and order holding that Amendment 2 and the company's subsequent refusal to pay petitioners their claimed in-service benefits did not violate the anticutback provisions of ERISA or the Plan's contractual anticutback clause. See Carter v. Pension Plan of A. Finkl & Sons Co., No. 08 C 7169, 2010 WL 1930133 (N.D. Ill. May 12, 2010), aff'd, 654 F.3d 719 (7th Cir. 2011). The District Court concluded that the Plan never terminated, and the in-service benefits claimed by petitioners were not the type of benefits that the anticutback provisions of ERISA or the Plan protected. Id. The District Court further observed that "[Finkl's] determination is consistent with the court's own reading of the Plan and the statutory requirements." Id. at *8. Moreover, the District Court observed that

**[*8]** "ERISA and the Internal Revenue Code contain identical anti-cutback provisions". <u>Id.</u> at *10.

Petitioners subsequently filed a motion for reconsideration with the District Court.

In September 2010 the District Court entered an order denying petitioners' motion for reconsideration, stating that "[t]he court sees no basis for the conclusion that ERISA's anti-cutback provisions protect * * * [petitioners'] claim for an in-service distribution, or that ERISA contemplates the distribution they seek in this lawsuit." <u>Carter v. Pension Plan of A. Finkl & Sons Co.</u>, No. 08 C 7169, 2010 WL 3516079, at *2 (N.D. Ill. Sept. 1, 2010). In addition, the District Court observed that the PBGC was informed of "Finkl's intent to abort the termination process and explicitly endorsed Finkl's withdrawal from termination." <u>Id.</u> at *3.

Petitioners appealed to the U.S. Court of Appeals for the Seventh Circuit. The PBGC filed an amicus curiae brief with the Court of Appeals in support of the District Court's decision. At oral arguments before the Court of Appeals, and in addition to their claims as described above, petitioners asserted that Finkl had violated 29 C.F.R. sec. 4041.28(a) (2003), a PBGC regulation dealing with the deadline for distributing plan assets in connection with plan termination.

**[\*9]** On August 15, 2011, the Court of Appeals affirmed the District Court's decision in all respects, concluding that petitioners' claimed benefits were not protected by the anticutback rules of ERISA or the Plan. See Carter, 654 F.3d 719. The Court of Appeals reiterated petitioners' claims, stating:

> Here, the * * * [petitioners] argue that they are entitled to relief under both * * * [ERISA's] anti-cutback prohibition and the pension plan's anti-cutback clause. So, there are two questions: first, whether Amendment 2 violated * * * [ERISA's] anti-cutback provision; second, whether Amendment 2 violated the contract's own anti-cutback clause. * * * [Id. at 725.]

Petitioners subsequently filed a petition for rehearing en banc with the Court of Appeals, reiterating their allegation that Finkl violated 29 C.F.R. sec. 4041.28(a) and alleging that the opinion of the Court of Appeals "improperly countenances a violation of this regulation" and "approves the unlawful refusal by Finkl * * * to complete the liquidation of the plan's assets". The Court of Appeals denied petitioners' request for a rehearing.

Thereafter petitioners declined to file a petition for writ of certiorari with the Supreme Court of the United States.

Petition for Declaratory Judgment

In February 2010, while the District Court litigation was still pending, petitioners timely filed with this Court a Petition For Declaratory Judgment

**[*10]** (Retirement Plan) pursuant to section 7476(a) to review the Commissioner's favorable determination.[3] Petitioners allege in their petition that Finkl's adoption of Amendment 2 and subsequent refusal to pay petitioners their claimed in-service benefits violated the anticutback provisions of the I.R.C., thereby causing the Plan to lose qualified status under section 401(a).[4] Specifically, petitioners allege that Finkl's adoption of Amendment 2 violated section 411(d)(6).[5]

---

[3] The petition was filed within the period specified in sec. 7476(b)(5). See Rule 210(c)(3).

[4] Finkl was joined as a respondent to this case by Order dated May 6, 2010. See Rule 215(a)(2).

[5] Sec. 411(d)(6) provides in part:

(6) Accrued benefit not to be decreased by amendment--

(A) In general.--A plan shall be treated as not satisfying the requirements of this section if the accrued benefit of a participant is decreased by an amendment of the plan, other than an amendment described in section 412(d)(2), or section 4281 of the Employee Retirement Income Security Act of 1974.

(B) Treatment of certain plan amendments.--For purposes of subparagraph (A), a plan amendment which has the effect of--

(i) eliminating or reducing an early retirement benefit or a retirement-type subsidy (as defined in regulations), or

(continued...)

**[*11]** Petitioners request in their petition that we enter a declaratory judgment that the Plan "is not a qualified plan by virtue of the adoption of Amendment #2 on May 27, 2008, notwithstanding the determination of the Commissioner to the contrary." Petitioners also request in their petition that the Court "reinstate" their claimed in-service benefits "upon such terms and conditions as may be specified by the Court".

After the Court of Appeals entered its opinion in the labor law proceedings, Finkl and the Commissioner filed amended answers in this Court asserting the applicability of collateral estoppel. On brief petitioners acknowledge that "[t]he District Court and Court of Appeals determined that Amendment No. 2 did not constitute an impermissible cutback of pension benefits protected by Title I of ERISA."

## Discussion

Under the doctrine of issue preclusion, or collateral estoppel, once an issue is "actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action

---

[5](...continued)

                    (ii) eliminating an optional form of benefit,

with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits. * * *

**[\*12]** involving a party to the prior litigation." Montana v. United States, 440 U.S. 147, 153 (1979) (citing Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n.5 (1979)). Collateral estoppel "is a judicially created equitable doctrine whose purposes are to protect parties from unnecessary and redundant litigation, to conserve judicial resources, and to foster certainty in and reliance on judicial action." Monahan v. Commissioner, 109 T.C. 235, 240 (1997) (citing Montana, 440 U.S. at 153-154, and United States v. ITT Rayonier, Inc., 627 F.2d 996, 1000 (9th Cir. 1980)). "Collateral estoppel may be utilized in connection with matters of law, matters of fact, and mixed matters of law and fact." Meier v. Commissioner, 91 T.C. 273, 283 (1988). The Commissioner may assert the doctrine of collateral estoppel as an affirmative defense although not a party to the prior Federal court proceeding. See Brotman v. Commissioner, 105 T.C. 141, 148 (1995).

As articulated in Peck v. Commissioner, 90 T.C. 162, 166-167 (1988), aff'd, 904 F.2d 525 (9th Cir. 1990), this Court may generally apply collateral estoppel when the following five conditions exist: (1) The issue in the second suit is identical in all respects to the one decided in the first suit; (2) there was a final judgment entered by a court of competent jurisdiction; (3) the person against whom collateral estoppel is asserted was a party or in privity with a party in the first suit; (4) the parties actually litigated the issue in the first suit, and resolution of the issue

**[*13]** was essential to the prior decision; and (5) the controlling facts and applicable legal rules remain unchanged from those in the first suit. See also Brotman v. Commissioner, 105 T.C. at 148. In addition we have considered whether special circumstances exist that warrant an exception to the application of collateral estoppel. See FMC Corp. & Subs. v. Commissioner, T.C. Memo. 2001-298, 2001 WL 1421927, at *7 (treating this consideration as a sixth condition necessary for collateral estoppel to apply); see also Boultbee v. Commissioner, T.C. Memo. 2012-227, at *13 (same); Atkinson v. Commissioner, T.C. Memo. 2012-226, at *13 (same).

In the instant case, petitioners make several alternative assertions but primarily argue that the first and fourth Peck conditions have not been satisfied, i.e., that the issue before us is not identical in all respects to any issue actually and necessarily determined by the final judgment of the Court of Appeals. We disagree.

Identity of Issues and Law

Although the instant case involves our review of the Commissioner's determination that the Plan retained qualified status under section 401(a), "collateral estoppel focuses on the identity of issues, not the identity of legal proceedings." Brotman v. Commissioner, 105 T.C. at 149 (citing Bertoli v. Commissioner, 103 T.C. 501, 508 (1994)).

[*14] The issue decided by the District Court and affirmed by the Court of Appeals was whether Finkl's adoption of Amendment 2 and subsequent refusal to pay petitioners their claimed in-service benefits constituted an impermissible cutback in violation of the anticutback provisions of ERISA, the I.R.C., and the Plan's anticutback clause. It is clear, and the District Court acknowledged in its opinion, that the anticutback provisions in ERISA and the I.R.C. are virtually identical. See Cent. Laborers' Pension Fund v. Heinz, 541 U.S. 739, 746-747 (2004) (equating the I.R.C. anticutback provision with that of ERISA). Thus, the issue as to whether Finkl's adoption of Amendment 2 violated the anticutback provisions of ERISA is substantively the same as whether the adoption of Amendment 2 violated the anticutback provisions of the I.R.C. Accordingly, "it is immaterial which statute was actually cited" by the District Court and Court of Appeals. Brotman v. Commissioner, 105 T.C. at 150.

In their petition to this Court, filed during the pendency of the District Court proceedings, petitioners allege that Finkl's adoption of Amendment 2 constituted an impermissible cutback of their claimed in-service benefits, the same allegation made in their pleadings with the District Court. The District Court, and later the Court of Appeals, held that no anticutback violation occurred and that petitioners were not entitled to their claimed in-service benefits. Indeed, petitioners appear to

**[\*15]** acknowledge this result, stating on brief that "[t]he District Court and Court of Appeals determined that Amendment No. 2 did not constitute an impermissible cutback of pension benefits protected by Title I of ERISA.". Therefore, we conclude that the issue before us is identical in all respects to the issue presented to the District Court and Court of Appeals.[6] Accordingly, the first Peck condition is satisfied.

Issue Actually Litigated and Essential to the Prior Decision

In general, "[a]n issue is decided if the issue's determination was necessary to support the judgment entered in the prior proceeding." Atkinson v. Commissioner, T.C. Memo. 2012-226, at \*17 (citing Blanton v. Commissioner, 94 T.C. 491, 496 (1990)). It is clear from the record that the issue before us was "actually and necessarily determined" by the District Court and the Court of Appeals. See

---

[6] As to petitioners' request in their petition that we "reinstate" their claimed in-service benefits "upon such terms and conditions as may be specified by the Court", petitioners have provided no authority, and we know of none, to support our jurisdiction with respect to such a request in this declaratory judgment action. Instead, our jurisdiction under sec. 7476 is narrowly defined. See Stevens v. Commissioner, T.C. Memo. 1985-192 ("Section 7476 is not a broad grant of jurisdiction to the Tax Court to conduct a review of factual matters related to controversies over retirement plans and to fashion equitable remedies to resolve these controversies."). Moreover, even if we had jurisdiction to decide such a matter, petitioners' request would be precluded because the District Court and Court of Appeals previously decided that petitioners were not entitled to the in-service benefits they claim.

**[*16]** <u>Montana</u>, 440 U.S. at 153-154. Petitioners make the same claims for in-service benefits and raise the very same anticutback issue that was "actually litigated" in the prior labor law litigation and that was "essential" to the final judgment of the Court of Appeals. See <u>Peck v. Commissioner</u>, 90 T.C. at 166-167. Accordingly, the fourth <u>Peck</u> condition is also satisfied. <u>Id.</u>

Remaining Peck Conditions

The second <u>Peck</u> condition is satisfied because, as stated above, the Court of Appeals entered a final judgment against petitioners, who did not file a petition for writ of certiorari within the 90-day period specified by rule 15 of the Rules of the Supreme Court of the United States. <u>Id.</u> The third <u>Peck</u> condition is satisfied because petitioners, the parties against whom collateral estoppel is asserted in the instant case, were parties in the prior labor law litigation. <u>Id.</u> The fifth <u>Peck</u> condition is satisfied because, on the basis of the record, we conclude that the controlling facts and applicable legal rules remain unchanged from those in the prior labor law litigation, and the parties do not contend otherwise. <u>Id.</u> Finally, we find no special circumstances that warrant an exception to the application of collateral estoppel in this case. See <u>Boultbee v. Commissioner</u>, T.C. Memo. 2012-227; <u>Atkinson v. Commissioner</u>, T.C. Memo. 2012-226; <u>FMC Corp. & Subs. v. Commissioner</u>, T.C. Memo. 2001-298.

**[\*17]** Therefore, we hold that the determination of the Court of Appeals "is conclusive" in the instant case even though the issue involved herein is the subject of a different cause of action.  See Montana, 440 U.S. at 153-154; see also Brotman v. Commissioner, 105 T.C. at 149 (citing Bertoli v. Commissioner, 103 T.C. at 508).

Petitioners' PBGC Regulation Argument

As discussed above, petitioners contend that the issue before us is not "identical in all respects" to any issue "actually and necessarily determined" in the labor law litigation.

On brief, for the first time in the instant case, and after the Court of Appeals had entered a final judgment, petitioners allege that the issue

> in this plan qualification litigation is whether Finkl's violation of * * *
> [29 C.F.R. sec. 4041.28(a)] rendered impermissible, at least for tax
> qualification purposes, its adoption of Amendment No. 2 and, if so,
> whether in that light, such adoption worked an impermissible cutback
> for tax qualification purposes.

Thus, petitioners' argument on brief, as we understand it, is that the District Court and Court of Appeals never "actually and necessarily determined" whether Finkl violated 29 C.F.R. sec. 4041.28(a) and if so, whether that violation constituted an "impermissible cutback" for "tax qualification purposes".

The PBGC regulation, 29 C.F.R. sec. 4041.28(a), cited by petitioners, involves the deadline for making a distribution of assets during the termination

**[\*18]** process and generally provides that during that process: "Unless a notice of noncompliance is issued * * * the plan administrator must complete the distribution of plan assets in satisfaction of plan benefits by the later of * * * [a date certain]".

First, no matter how many references petitioners make to "tax qualification purposes" or "plan qualification litigation", we reiterate that the focus of collateral estoppel is on the identity of issues, not the identity of claims or causes of action. Therefore, so long as the issues are identical, it is immaterial that the instant case involves an anticutback challenge with respect to the tax qualification of the Plan in contrast to the anticutback challenge first brought in the District Court. Brotman v. Commissioner, 105 T.C. at 149 (citing Bertoli v. Commissioner, 103 T.C. at 508).

Furthermore, petitioners do not mention 29 C.F.R. sec. 4041.28(a) anywhere in their pleadings with this Court, having raised their allegation for the first time on brief (and after the Court of Appeals had rendered its decision). More importantly, however, petitioners failed to allege any violation of 29 C.F.R. sec. 4041.28(a) in their written comments to the Commissioner and therefore did not exhaust their administrative remedies with respect thereto. Accordingly, petitioners have failed to establish the appropriate jurisdictional prerequisites regarding their new allegation in the instant case. See sec. 7476(b)(3); Rules 210(c)(4), 217(a); Thompson v. Commissioner, 71 T.C. 32, 33-37 (1978).

**[*19]** Moreover, the record shows that the Court of Appeals considered, and rejected, the identical argument that petitioners now present to this Court on brief. Petitioners argued that Finkl violated 29 C.F.R. sec. 4041.28(a) at oral arguments before the Court of Appeals. When that argument was rejected, petitioners raised it again in a petition for rehearing en banc filed with the Court of Appeals. In that regard, petitioners even referenced the text of an amicus curiae brief filed by the PBGC with the Court of Appeals during the prior labor law litigation proceedings. Furthermore, in their petition for rehearing en banc, petitioners alleged that the opinion of the Court of Appeals "improperly countenances a violation of this regulation" and "approves the unlawful refusal by Finkl * * * to complete the liquidation of the plan's assets". Petitioners' allegations were again rejected by the Court of Appeals. On the basis of the record, we conclude that (1) petitioners actually litigated the PBGC regulation issue and (2) resolution of that issue was essential to the judgment of the Court of Appeals. See Peck v. Commissioner, 90 T.C. at 166-167. Therefore, petitioners are precluded from relitigating their 29 C.F.R. sec. 4041.28(a) allegation in the instant case.

Conclusion

In sum, collateral estoppel precludes petitioners from relitigating the anticutback issue they raise in their petition with this Court. Furthermore, we find

[*20] no special circumstances that warrant an exception to the application of collateral estoppel in the instant case.  Accordingly we are unable to conclude that the Commissioner erred in issuing a favorable determination letter regarding the continuing qualification of the Plan on the grounds raised by petitioners in their petition.

Finally, in reaching the conclusions described herein, we have considered all arguments made by petitioners and, to the extent not expressly discussed above, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered for respondents</u>.